UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GULF COAST BANK AND TRUST COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-205** |
| **TALOS ENERGY, INC.** | **SECTION: "G"(3)** |

## ORDER AND REASONS

Before the Court is Defendants Talos Production, Inc., improperly named as Talos Energy, Inc. ("Talos Energy") in the Petition, and Talos Energy's (collectively, "Talos") Motion for Judgment on the Pleadings.[1] Talos asserts Plaintiff's open account claim should be dismissed because maritime law governs this dispute.[2] Plaintiff Gulf Coast Bank and Trust Company ("Plaintiff") opposes the motion.[3] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion to the extent it requests the Court find that maritime law governs this dispute. The Court also grants Plaintiff leave to file an amended complaint.

## I. Background

In 2019, Talos Production and DHD Offshore Services, LLC ("DHD") entered into a Master Service Agreement ("MSA"), allowing DHD to "perform and provide work, operations, goods and services" as an independent contractor for Talos.[4] Though the contract did not "obligate"

---

[1] Rec. Doc. 18.

[2] Rec. Doc. 18-1.

[3] Rec. Doc. 25.

[4] Rec. Doc. 12-2.

1

Talos "to order Work from" DHD, it "control[led] and govern[ed] all Work ordered" by Talos and "accepted by" DHD.[5] Among the agreements entered into under the MSA was a "bareboat charter" agreement signed in November 2023.[6] This contract allowed Talos to charter a vessel for its use.[7] According to the MSA, payment for such work orders was due after DHD's "full and final completion of the Work and submission of a proper Invoice" and Talos's "acceptance of the Work."[8] Throughout 2024, DHD charged Talos for allegedly approved work and services under both the MSA and the bareboat charter agreement.[9]

DHD assigned its alleged interest in Talos's account receivables to Plaintiff through a Receivable Purchase Agreement ("RPA").[10] On November 22, 2024, Plaintiff sent Talos a letter reminding Talos of its obligation to remit payments to Plaintiff.[11] Plaintiff alleges that Talos has failed to make payment on the accounts.[12] On December 30, 2024, Plaintiff filed suit against Talos in the Civil District Court for the Parish of Orleans.[13] Plaintiff brings one claim under Louisiana

---

[5] *Id.*

[6] Rec. Doc. 12-3.

[7] *Id.*

[8] Rec. Doc. 12-2.

[9] Rec. Doc. 2-1.

[10] *Id.* at 6.

[11] *Id.* at 7.

[12] *Id.*

[13] *Id.*

Revised Statute § 9:2781, Louisiana's "Open Account Statute."[14] On January 30, 2025, Talos removed the case to this court based on diversity jurisdiction.[15]

On March 7, 2025, Talos filed an answer and counterclaim against Plaintiff.[16] The counterclaim alleges unjust enrichment, payment not due, payment by mistake, and conversion.[17] On March 20, 2025, Talos filed the instant Motion for Judgment on the Pleadings.[18] On April 8, 2025, Plaintiff filed an opposition to the motion.[19] On April 14, 2025, Talos filed a reply brief in further support of the motion.[20]

## II. Parties' Arguments

### A.    *Talos' Argument in Support of the Motion*

Talos argues that Plaintiff's open account claim should be dismissed.[21] Talos asserts the payment obligations Plaintiff claims Talos breached are contained in the MSA and bareboat charter agreement, which are maritime in nature.[22] Talos contends that the Fifth Circuit and judges within the Eastern District of Louisiana have held Louisiana's open account statute is preempted by federal maritime law.[23] Talos acknowledges that a fraction of the disputed invoices relate to non-

---

[14] *Id.* at 8.

[15] Rec. Doc. 2. The notice of removal alleges that the parties are completely diverse because Plaintiff is a citizen of Louisiana and Talos is a citizen of Delaware and Texas. *Id.* at 4. The amount in controversy exceeds $75,000 because Plaintiff alleges it is entitled to recover accounts receivable in the amount of $1,978,623.58. *Id.* at 5.

[16] Rec. Doc. 12.

[17] *Id.* at 8–9.

[18] Rec. Doc. 18.

[19] Rec. Doc. 25.

[20] Rec. Doc. 27.

[21] Rec. Doc. 18-1.

[22] *Id.* at 4.

[23] *Id.*

maritime work. However, Talos asserts this does not change the underlying nature of the contract.[24] Therefore, because Gulf Coast's claim against Talos derived from the maritime contracts between Talos and DHD, Talos argues maritime law governs and preempts Louisiana's open account statute.

B.  *Plaintiff's Arguments in Opposition to the Motion*

In opposition, Plaintiff argues its right to recover from Talos is governed by the RPA, which is not a maritime contract.[25] While the MSA and bareboat charter agreement may relate to maritime activity, Plaintiff asserts the RPA was not conditioned on this purpose and does not refer to this purpose in any way.[26] Therefore, Plaintiff asserts its claims are not within maritime jurisdiction and are more properly governed by Louisiana's open account statute.[27]

Even if this Court finds that some of the outstanding invoices relate to maritime work pursuant to a maritime contract, Plaintiff argues that this Court should permit it to maintain its claim under Louisiana's open account law for those invoices involving non-maritime activities.[28] Plaintiff asserts the invoices not related to maritime work are for $648,000, of the $1,978,623.58.[29] Plaintiff contends that amount is not insignificant and is not merely a "fringe" segment of the

---

[24] *Id.* at 6.

[25] Rec. Doc. 25 at 2.

[26] *Id.* at 4.

[27] *Id.*

[28] *Id.*

[29] *Id.*

4

amounts owed.[30] Alternatively, Plaintiff requests leave to amend its complaint to assert a claim for breach of maritime contract against Talos.[31]

C.     *Talos' Arguments in Further Support of the Motion*

Talos asserts that Plaintiff's first argument—that the RPA governs this dispute—fails because the only contracts that Plaintiff can seek to enforce against Talos are the underlying maritime contracts that gave rise to Talos's alleged payment obligations.[32] Talos contends Plaintiff's second argument—that it should be able to maintain an open account claim for the non-maritime activities—is undermined by Supreme Court precedent, which provides that a contract that includes some non-maritime activities is still considered a maritime contract when its substantial purpose is the pursuit of maritime commerce.[33] Talos does not oppose Plaintiff's request for leave to amend the pleadings to assert a claim for breach of contract under maritime law.[34]

## III. Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[35] A motion under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any

---

[30] *Id.*

[31] *Id.* at 5.

[32] Rec. Doc. 27 at 1.

[33] *Id.* at 2.

[34] *Id.*

[35] Fed. R. Civ. P 12(c).

judicially noticed facts."[36] The motion "is subject to the same standard as a motion to dismiss under Rule 12(b)(6)."[37] "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[38] In ruling on a 12(c) motion, "[p]leadings should be construed liberally," and judgment is appropriate "only if there are no disputed issues of fact and only questions of law remain."[39] The Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff," but need not "accept as true conclusory allegations or unwarranted deductions of fact."[40] The Court "may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[41]

### IV. Analysis

According to the Supreme Court, "A maritime contract is one in which the 'primary objective is to accomplish the transportation of goods by sea . . . .'"[42] In determining whether a contract is maritime, courts look to "the nature and character of the contract" to determine whether it has "reference to maritime service or maritime transactions."[43] The Fifth Circuit has adopted a two-part test to determine whether a contract is maritime: (1) the contract "must be for services to facilitate activity on navigable waters" and (2) the contract "must provide, or the parties must

---

[36] *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)).

[37] *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)).

[38] *Great Plains Tr. Co.*, 313 F.3d at 312 (alteration in original) (quoting *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)).

[39] *Id.* (quoting *Hughes*, 278 F.3d at 420).

[40] *Id.* at 312–13 (first quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); then quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (2000)).

[41] *Id.* at 312 (quoting *Jones*, 188 F.3d at 324).

[42] *Norfolk Southern Ry. Co. v. Kirby*, 543 U.S. 14, 24 (2004).

[43] *Id.* at 23.

expect, that a vessel will play a substantial role in the completion of the contract."[44]

Plaintiff does not dispute that the MSA and the bareboat charter agreement are maritime contracts. The MSA anticipates that DHD would perform work "over any navigable waters or on the outer continental shelf" and required certain marine insurance policies for that work.[45] The agreement also contains a choice of law clause requiring application of the "General Maritime Laws of the United States."[46] Finally, the MSA explained that "any applicable work order . . . shall control and govern all Work ordered by Company and accepted by Contractor and shall define the rights and obligations of Company and Contractor."[47] The work order at issue here is the bareboat charter agreement, which allowed Talos to charter a vessel.[48] Therefore, the first prong of the maritime contract test is met because the contract is for services to facilitate activity on navigable waters.

The bareboat charter agreement is for the charter of a heavy lift and pipelay vessel. The contract and the contracting parties clearly envisioned that a vessel would play the central role in fulfilling the terms of this agreement. The second prong of the inquiry is also satisfied.

Plaintiff relies on *Kreatsoulas v. Freights of Levant Pride and Levant Fortune*,[49] a 1993 case decided by a district judge in the Southern District of New York, to argue that its claims arise under the RPA rather than the maritime contracts. In *Kreatsoulas*, the underlying contract was a

---

[44] *Barrios v. Centaur, L.L.C.*, 942 F.3d 670, 680 (5th Cir. 2019).

[45] Rec. Doc. 12-2 at 9–11.

[46] *Id.* at 7.

[47] *Id.* at 1.

[48] Rec. Doc. 12-3 at 1.

[49] 838 F. Supp. 147 (S.D. N.Y. 12/2/1993).

loan issued by the plaintiff to a steamship company that offered ocean freight carriage services.[50] To secure the loan the defendants made a personal guaranty to the plaintiff, and the steamship company assigned the plaintiff the freights of the vessels as collateral.[51] When the steamship company defaulted on the loan, the plaintiff filed suit against the defendants pursuant to the personal guaranty and against the freight *in rem*.[52] The defendants moved to dismiss for lack of subject matter jurisdiction, arguing that the guaranty and assignment were not maritime contracts and thus were not subject to federal admiralty jurisdiction.[53] The district court agreed stating that the contract "concerns a guarantor's promise to pay money to a lender in the event that the borrower defaults on a loan. The link between this promise and the operation, management, or navigation of any ship is, at best, a tenuous one."[54] The court also held that the assignment of freights did not implicate maritime concerns because the primary purpose of the assignment was to provide collateral for a loan and "had no relation to the operation or management of the vessels."[55]

This case is easily distinguishable from *Kreatsoulas*. The contract at issue there was a personal guaranty and an assignment against the freight *in rem*. The plaintiff had direct privity of contract with the defendants via the personal guaranty and it could enforce the assignment directly against the freights in rem. In this case, there is no contract between Plaintiff and Talos. DHD assigned Plaintiff the rights DHD had to recover from Talos under the maritime contracts. In a

---

[50] *Id.* at 148.

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.* at 152.

similar situation, the Eleventh Circuit has held "where a contract is indisputably maritime in nature, such as the shipping contract at issue in this case, and a party to the contract assigns its rights to a third party, the third party may sue in admiralty to enforce the original contract, even though the assignment contract itself might not be within the federal courts' admiralty jurisdiction."[56] In this case, the relevant contracts are the MSA and bareboat charter agreements, which are undisputably maritime contracts.

Talos acknowledges that a portion of the disputed invoices relate to non-maritime work. The Supreme Court has endorsed a "conceptual rather than spatial approach" to the contractual inquiry, refusing to draw "artificial" lines at the "shore."[57] If the "substantial" purpose of the agreement is in pursuit of "maritime commerce," incidental non-maritime elements do not alter a contract's maritime quality.[58]

Talos suggests, and Plaintiff does not dispute, that $1,330,000 of the $1,978,623.58 allegedly owed are for "barge days." Plaintiff argues that the maritime law should not apply to this portion of the invoices, but it does not cite any authority for this proposition. The bareboat charter agreement is for a derrick barge referred to in the contract as the "DHD 300T Heavy Lift & Pipelay Vessel."[59] The objective of the contract "is to provide Talos a Bareboat Charter Agreement."[60] The contract clearly provides that a vessel would play the central role in fulfilling the terms of the parties' agreement. Therefore, the substantial purpose of the agreement is in pursuit of maritime

---

[56] *See Ambassador Factors v. Rhein-, Maas-, Und See-Schiffahrtskontor GMBH*, 105 F.3d 1397, 1400 (11th Cir. 1997).

[57] *Norfolk*, 543 U.S. at 24–25.

[58] *Id.* at 27.

[59] Rec. Doc. 12-3 at 1.

[60] *Id.* at 3.

commerce, and maritime law governs this dispute.

"When interpreting maritime contracts, federal admiralty law rather than state law applies."[61] Louisiana's Open Account statute allows for the recovery of attorneys' fees. The Fifth Circuit has recognized that this relief is inconsistent with maritime law, which is "governed by the 'American Rule,' pursuant to which each party bears its own costs."[62] For the reasons set forth above, maritime law governs this dispute, and Plaintiff's Open Account claim must be dismissed.

Plaintiff requests leave to amend the Complaint to clarify its claims under maritime law, and Talos does not oppose this request. Accordingly,

**IT IS HEREBY ORDERED** that Talos' Motion for Judgment on the Pleadings[63] is **GRANTED** to the extent it requests the Court find that maritime law governs this dispute.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to file an amended complaint within 14 days of this Order to clarify the basis of its claims under maritime law.

**NEW ORLEANS, LOUISIANA,** this 10th day of June, 2025.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[61] *Holmes Motors, Inc. v. BP Expl. & Prod., Inc.* 829 F.3d 313, 315 (5th Cir. 2016) (citing *Int'l Marine, L.L.C. v. Delta Towing, L.L.C.*, 704 F.3d 350, 354 (5th Cir. 2013)); *Norfolk*, 543 U.S. at 22–23.

[62] *Sea Link Cargo Servs. Inc. v. Marine Ctr. Inc.*, 380 F. App'x 460, 463 (5th Cir. 2010) (quoting *Texas A & M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 405 (5th Cir. 2003)).

[63] Rec. Doc. 18.